UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

QUALITY CONSTRUCTION &
PRODUCTION, L.L.C.

CASE NO.  6:24-CV-01776

VERSUS

JUDGE ROBERT R. SUMMERHAYS

REC MARINE LOGISTICS, LLC, ET AL.

MAGISTRATE JUDGE CAROL B.
WHITEHURST

## RULING

Before the Court is Travelers Lloyd's Underwriter Syndicate No. 5000 TRV's Motion for Judgment on the Pleadings [ECF No. 53] and Quality Construction & Production, L.L.C.'s Motion for Summary Judgment [ECF No. 26]. For the reasons that follow, Travelers' motion [ECF No. 53] is GRANTED and QCP's motion [ECF No. 26] is DENIED WITHOUT PREJUDICE.[1]

### I.
### BACKGROUND

**A. Underlying Litigation.**

The present case involves an insurance coverage dispute arising from personal injuries allegedly sustained by Russel J. Gannard, III, an employee of Quality Construction & Production, L.L.C. ("QCP").[2] Gannard originally filed suit against Island Operating Company, Inc. and Gulf Offshore Logistics, LLC on July 26, 2023,[3] but subsequently filed an Amended Complaint dismissing the two original defendants and naming REC Marine Logistics, LLC ("REC Marine") in their place.[4] Gannard alleges he was injured on April 28, 2023, while being transferred from the

---

[1] Travelers moved to withdraw its first Motion for Judgment on the Pleadings [ECF No. 11]. Travelers' Motion to Withdraw [ECF No. 64] is GRANTED.
[2] Case 6:23-cv-00993.
[3] Case 6:23-cv-00993, ECF No. 1 at 1.
[4] Case 6:23-cv-00993, ECF No. 6 at 1.

1

deck of an REC Marine vessel ("the Vessel") to an offshore fixed platform owned by Arena Offshore, LP ("Arena"), by way of a crane on the platform.[5] Gannard claims that while he was attempting to enter the personnel basket, the basket briefly lost contact with the surface of the Vessel and then slammed back down onto the deck, resulting in injuries.[6] Gannard later learned in discovery that the crane operator, who he originally alleged was a co-employee of QCP, was actually an employee of a related entity named Quality Production Management, LLC ("QPM").[7] On June 2, 2025, Gannard filed a Second Amending and Supplemental Complaint, naming QPM as a defendant.[8]

### B. Relevant Coverage Issues.

It is undisputed that REC Marine and Arena are parties to a Master Time Charter Agreement (the "REC/Arena MTCA"), wherein Arena agreed to defend, indemnify and hold harmless, REC Marine "for any injury, illness, disease or death of employees of CHARTERER [Arena], its other contractors, or their employees or agents . . . ."[9] Arena also agreed to insure its defense and indemnity obligations to REC Marine and to name REC Marine as an additional assured under the relevant policies.[10]

QCP entered into a Master Service Contract with Arena (the "QCP/Arena MSA"), wherein QCP agreed to provide certain services to Arena, including work on fixed platforms in the Gulf of Mexico adjacent to the State of Louisiana.[11] QCP also agreed to indemnify and defend both Arena and the Company Group, which includes REC Marine, from all claims and demands by the

---

[5] *Id.* at 3.
[6] *Id.*
[7] Case 6:23-cv-00993, ECF No. 19 at 1-2.
[8] *Id.*
[9] ECF No. 8 at 10.
[10] *Id.* at 10-11.
[11] ECF No. 1-1; ECF No. 16 at 3.

Contractor Group (including QCP's employees).[12] QCP also arranged for Arena to obtain insurance coverage under QCP's policies for both Arena and the Company Group.[13] QCP is a Named Insured under an insurance policy issued by Travelers Underwriter Syndicate No. 5000 TRV ("Travelers").[14] As contemplated in the QCP/Arena MSA, Arena paid the insurance premiums on behalf of itself and the Company Group, which provided additional insured coverage under the Travelers insurance policy (the "Policy").[15] The QCP/Arena MSA is silent as to responsibility for the payment of any deductibles that might be owed for the additional insured coverage under the Policy.[16]

Arena also entered into a Master Service Contract with QPM (the "QPM/Arena MSA").[17] Mirroring the QCP/Arena MSA, QPM agreed to provide certain services to Arena,[18] agreed to indemnify and defend Arena and the Company Group from all claims and demands made by the Contractor Group,[19] and arranged for Arena and the Company Group to obtain insurance coverage under the Policy (under which QPM is a Named Insured).[20]

Pursuant to the REC/Arena MTCA, REC Marine tendered its defense and indemnity and demanded additional insured coverage from Arena on the ground that Gannard was an employee of Arena's contractor, QCP.[21] Arena then made demand on QCP to defend and indemnify REC Marine as part of Arena's Company Group pursuant to the terms of the QCP/Arena MSA.[22]

---

[12] ECF No. 1-1 at 3.
[13] *Id.* at 2-3.
[14] ECF No. 11-4 at 2, 8.
[15] ECF No. 1-1 at 2-3.
[16] *See* ECF No. 1-1.
[17] ECF No. 44-1 at 4-16.
[18] *Id.* at 4.
[19] *Id.* at 6-7.
[20] *Id.* at 5-6; ECF No. 11-4 at 2, 8.
[21] ECF No. 1 at 5; ECF No. 16 at 2; ECF No. 5 at 4.
[22] ECF No. 1 at 5; ECF No. 16 at 3.

3

On November 7, 2023, QCP put Travelers on notice of Arena's demand to QCP for defense and indemnity of REC Marine under the terms of the QCP/Arena MSA.[23] On June 28, 2024, Travelers agreed to participate in REC Marine's defense in the *Gannard* litigation, subject to a complete reservation of rights, including the right to withdraw its defense and deny coverage to REC Marine at a later time.[24]

### C. Travelers' Policy.

Travelers issued the Policy to QCP for the period of January 1, 2023 through January 1, 2024.[25] The Policy includes a choice of law and jurisdiction clause providing that "[t]his insurance shall be subject to the law and Practice of New York."[26] The Policy's Commercial General Liability Coverage Form provides that Travelers will indemnify the insured for liability arising from bodily injury to which the Policy applies.[27] The Policy also includes an Additional Insured Endorsement which modifies the Policy so that Travelers must also cover additional insureds.[28]

The first page of the policy states that the "Insured" is "The Quality Companies, LLC (and as per schedule of Named Insureds)."[29] The schedule contains a list of 18 companies, among them QCP and QPM, but not Arena or REC Marine.[30] The term "insured" is also defined under a section of the Policy entitled "SECTION II – WHO IS AN INSURED."[31] The Policy further defines "you" and "your" as referring to the Named Insureds.[32] The Additional Insured Endorsement defines the term "additional insured" as follows:

---

[23] ECF No. 8 at 7.
[24] ECF No. 11-2.
[25] ECF No. 11-4 at 1.
[26] *Id.* at 4.
[27] *Id.* at 14, 79.
[28] *Id.* at 28.
[29] *Id.* at 1-2.
[30] *Id.* at 8.
[31] ECF No. 11-4 at 79.
[32] *Id.* at 51, 79.

4

"additional insured" means any person or entity to whom the "insured" is obliged by an "insured contract" entered into before any relevant "occurrence" to provide insurance such as is afforded by this insurance with respect to "bodily injury" or "property damage" arising out of operations conducted by the "insured" but only to the extent required by any indemnity given by the "insured" in said "insured contract" to the additional insured.[33]

The Policy also has a Contractual Liability Exclusion, which excludes coverage for contractual liability unless that liability was assumed in an "insured contract."[34] The Policy defines an "Insured Contract" as follows:

> f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damages" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.[35]

### D. Procedural History.

QCP initiated the present case with the filing of a Complaint for Declaratory Judgment against REC Marine and Travelers, wherein QCP seeks declaratory relief on (1) whether REC Marine is responsible for the $250,000 deductible under the Policy, and (2) whether QCP's payment of the deducible would violate the LOAIA.[36] Arena filed a Complaint in Intervention against QCP, REC Marine, and Travelers, seeking a declaratory judgment that it is not obligated to pay the deductible under the Policy and a declaration that it is an additional insured under the Policy.[37]

On June 11, 2025, Travelers filed its first Motion for Judgment on the Pleadings [ECF No. 11], seeking an entry of judgment granting Travelers' Crossclaim against REC Marine and

---

[33] *Id.* at 28.
[34] ECF No. 11-4 at 80.
[35] *Id.* at 91.
[36] ECF No. 1.
[37] ECF No. 16.

declaring that the Policy's Watercraft Exclusion applies, excluding coverage for the claims asserted against REC Marine in the *Gannard* litigation.[38] On July 25, 2025, QCP filed a Motion for Summary Judgment [ECF No. 26], seeking a judgment that QCP's obligation to pay the Policy's deductible on behalf of Arena and/or REC Marine violates the LOAIA.[39] On September 19, 2025, Travelers filed a second Motion for Judgment on the Pleadings [ECF No. 53], seeking an entry of judgment granting Travelers' Counterclaim against Arena and dismissing Arena's claim for contractual liability coverage under the Policy.[40] On November 20, 2025, the Court heard oral argument on the preceding motions.[41] On January 13, 2026, Travelers moved to withdraw its first Motion for Judgment on the Pleadings [ECF No. 11].[42]

## II.
### TRAVELERS' MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. Rule 12(c) Standard.

The standard for a Rule 12(c) motion for judgment on the pleadings "is the same as that for dismissal for failure to state a claim under Rule 12(b)(6)."[43] To survive such a motion, the complaint must set forth sufficient factual allegations "to state a claim to relief that is plausible on its face."[44] The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[45]

---

[38] ECF No. 11.
[39] ECF No. 26.
[40] ECF No. 53.
[41] ECF No. 62.
[42] ECF No. 64.
[43] *Johnson v. Miller*, 98 F.4th 580, 583 (5th Cir. 2024) (quoting *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 439 (5th Cir. 2015)).
[44] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
[45] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Twombly* at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level," and not merely create "a suspicion [of] a legally cognizable right of action.") (quoting 5 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)).

Although a complaint does not need detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[46] "A pleading that offers labels and conclusions or a formulaic recitation of the elements" will not suffice, nor will a complaint that merely tenders "naked assertions devoid of further factual enhancement."[47] When deciding such a motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[48] However, this tenet does not apply to conclusory allegations, unwarranted deductions, or legal conclusions couched as factual allegations, as such assertions do not constitute "well-pleaded facts."[49] The court generally "must limit itself to the contents of the pleadings, including attachments thereto."[50] One exception to this rule is that district courts "may permissibly refer to matters of public record."[51]

Travelers seeks a judgment on its own pleading—Travelers' Counterclaim against Arena. When a plaintiff is the movant, the court must accept all factual allegations in the answer as true and draw all reasonable inferences in favor of the defendant, the non-movant.[52] Thus, the Court will draw all reasonable inferences in favor of Arena.

### B. Choice of Law.

The Court has subject matter jurisdiction over this case pursuant to 43 U.S.C. 1349(b)(1)(A) of the Outer Continental Shelf Lands Act ("OCSLA"). OCSLA "extends federal

---

[46] *Iqbal* at 678.

[47] *Id.* (internal quotation marks, alterations omitted) (quoting *Twombly* at 555, 557).

[48] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted); *see also Iqbal* at 679 ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

[49] *Twombly* at 555.

[50] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

[51] *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994); *see also Test Masters Educational Services, Inc. v. Singh*, 428 F.3d 559, 570 n.2 (5th Cir. 2005).

[52] *Beal v. Missouri Pacific R. R. Corporation in Nebraska*, 312 U.S. 45, 51 (1941); *Damonte v. Higgins Indus.*, 2 F.R.D. 486, 486 (E.D. La. 1942).

law to the subsoil and seabed of the [OCS] and all attachments thereon," and it adopts the adjacent state's laws as "surrogate federal law," to the extent the state's laws "'are applicable and not inconsistent with' other federal law."[53] No party disputes that the underlying accident occurred off the coast of Louisiana. Thus, in interpreting the Policy, Louisianna choice of law rules apply.

Under Louisiana's choice of law rules, "the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract."[54] If a contract contains a choice-of-law provision, it is presumed valid, unless "that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537."[55] Louisiana Civil Code article 3537 states that the court should apply the law of "the state whose policies would be most seriously impaired if its law were not applied . . . ."[56] The party challenging a choice-of-law provision bears the burden of proving that the law chosen by the parties is invalid.[57]

QCP and REC Marine are Louisiana limited liability companies,[58] and the putative additional insured, Arena, is a limited partnership formed under the law of Delaware with its principal place of business in Texas.[59] The Policy includes a choice-of-law provision calling for the application of New York law.[60] The Court must apply New York law unless New York law "contravenes the public policy" of Louisianna.[61] No party has identified any public policies of Louisiana that would be disserved by the application of New York law. Accordingly, the Court

---

[53] 43 U.S.C. § 1349(b)(1); *Kennedy v. Shell USA, Inc.*, No. CV 22-4591, 2024 WL 2863381, at *3 (E.D. La. June 6, 2024).

[54] *Tiley v. Republic Fire & Cas. Ins. Co.*, No CV 16-00198-BAJ-RLB, 2016 WL 4599911 at *2 (M.D. La. Sept 2, 2016) (quoting *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014).

[55] La. Civ. Code art. 3540; *see also Carter v. Youngsville II Hous. LLLP*, No. CV 16-01496, 2018 WL 2410804, at *3 (W.D. La. May 25, 2018) (citing *Barnett v. Am. Const. Hoist, Inc.*, 91 So. 3d 345, 349 (La. App. 1 Cir. 2012)).

[56] La. Civ. Code art. 3537.

[57] *Carter*, 2018 WL 2410804, at *3.

[58] ECF No. 1 at 2-3.

[59] ECF No. 16 at 1.

[60] ECF No. 11-4 at 4.

[61] La. Civ. Code art. 3540.

gives full effect to the parties' choice-of-law provision and applies New York law in interpreting the Policy. For the purposes of Travelers' motion, however, it matters little whether New York or Louisianna law applies because the analysis under either state's contract law is substantively similar.

### C. Is Arena Entitled to Contractual Liability Coverage Under the Policy?

Travelers seeks entry of a judgment granting its Counterclaim against Arena and dismissing Arena's claim for contractual liability coverage under the Policy. Travelers argues that Arena is not entitled to contractual liability coverage for its indemnity obligations to REC Marine pursuant to the REC/Arena MTCA because that contract is not an "insured contract" as defined by the Policy. The Court agrees and grants the motion.

The Policy excludes coverage for contractual liability unless that liability was assumed in an "insured contract."[62] Arena's contractual indemnity exposure to REC Marine stems from the REC/Arena MTCA, but this is not an insured contract under the Policy. To qualify as an insured contract under the terms of the Policy, one of the Named Insureds must be a party to that contract and must also assume the tort liability of another party in that contract.[63] The REC/Arena MTCA does not meet either condition.

Arena argues that QCP assumed Arena's contractual and tort liability to REC Marine through the QCP/Arena MSA, which *is* an insured contract. However, even drawing all inferences in favor of Arena, the QCP/Arena MSA does not assume Arena's liability to REC Marine. The indemnity provision in the QCP/Arena MSA states:

> Contractor [QCP] agrees to indemnify, defend, and save harmless Company Group [including Arena and REC Marine] . . . from and against all claims, demands, judgments, defense costs or suits (including but not limited to claims, demands, judgments or suits for property damage, bodily injury, illness, disease, death or for

---

[62] ECF No. 11-4 at 80.
[63] *Id.* at 91.

loss or services, or wages or for loss of consortium or society) *by Contractor Group* or any invitee of Contractor Group, in any way, directly or indirectly, arising out of the performance of this contract . . . .[64]

Even if the indemnity provision could be interpreted to include Arena's contractual liability, QCP is only required to indemnify Arena for claims made by members or invitees of Contractor Group. Because REC Marine is not a member or invitee of Contractor Group, QCP is not required to indemnify Arena for a demand made by REC Marine. Additionally, the Policy defines an "insured contract" as "part of any other contract or agreement . . . under which [an insured] assume[s] the *tort liability* of another party . . . ."[65] If the indemnity provision were read to include contractual liability for a demand made by REC Marine, then the provision would not qualify as an insured contract.[66]

Because QCP employees are members of Contractor Group,[67] QCP would be required to indemnify Arena for tort claims made by Gannard against Arena. However, Gannard has not made any claims against Arena. Arena's contention that REC Marine's tort liability to Gannard "passes through" to Arena and maintains its status as a tort claim by a member of Contractor Group is unfounded. The only source of Arena's liability is REC Marine's demand against Arena pursuant to the terms of the REC/Arena MTCA. Without this demand, Arena would have no potential liability.

Arena's payment of premiums and its purported status as an additional insured does not entitle it to contractual liability coverage because QCP did not assume Arena's contractual liability to REC Marine in the QCP/Arena MSA. Thus, the Policy does not provide contractual liability

---

[64] ECF No. 1-1 at 3 (emphasis added).
[65] ECF No. 11-4 at 91 (emphasis added).
[66] Moreover, the additional insured endorsement limits coverage to damages for "bodily injury" or "property damage." ECF No. 11-4 at 28.
[67] ECF No. 1-1 at 1.

coverage to Arena for any indemnity obligation it may owe to REC Marine under the REC/Arena MTCA. For this reason, Travelers' motion for judgment on the pleadings is granted.

## III.
## QCP's MOTION FOR SUMMARY JUDGMENT

The Court next turns to QCP's motion for summary judgment.[68] QCP's motion addresses whether QCP must pay the entirety of the $250,000 deductible owed under the Policy, including amounts attributable to liability and defense costs incurred by Arena and/or REC Marine as a result of their own fault. QCP argues that, as a matter of law, the requirement that it pay the entire deductible shifts the economic burden of indemnifying a principal for its own fault onto the indemnitor and thus violates the Louisiana Oilfield Anti-Indemnity Act ("LOAIA").

### A. The Summary Judgment Standard.

"A party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought."[69] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[70] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[71] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues

---

[68] Travelers noted at oral argument that granting its Motion for Judgment on the Pleadings [ECF No. 53] moots all other motions, including QCP's Motion for Summary Judgment, because there would be no coverage available under the Policy. This is not so. In granting Travelers' motion, the Court only dismisses Arena's claim for declaratory judgment. Even without Arena's claim, QCP is still contractually obligated under the QCP/Arena MSA to indemnify REC Marine for its potential tort liability to Gannard, and this obligation is covered under the Policy. Thus, QCP's Motion for Summary Judgment [ECF No. 26], which raises the question of whether this contractual obligation violates the LOAIA, is not moot.

[69] Fed. R. Civ. P. 56(a).

[70] Id.

[71] Quality Infusion Care, Inc. v. Health Care Service Corp., 628 F.3d 725, 728 (5th Cir. 2010).

on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[72]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[73] "Credibility determinations are not part of the summary judgment analysis."[74] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[75]

Rule 56(d) addresses the issue of premature summary judgment motions, providing that if a nonmovant shows that they cannot present facts essential to justify their opposition, the court may defer consideration of the motion, deny it, allow time for discovery, or issue another appropriate order.[76] "[T]o justify a continuance, the Rule 56(d) motion must demonstrate (1) why the movant needs additional discovery, and (2) how the additional discovery will likely create a genuine issue of material fact."[77] A plaintiff "may not simply rely on vague assertions that

---

[72] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).

[73] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (the court must view all facts and evidence in the light most favorable to the non-moving party).

[74] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).

[75] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

[76] Fed. R. Civ. P. 56(d).

[77] *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 534–35 (5th Cir. 1999) (citing *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1442 (5th Cir. 1993)).

additional discovery will produce needed, but unspecified, facts."[78] Rather, the plaintiff "must set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."[79] "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted."[80]

## B. Choice of Law.

The Court first addresses choice of law. Arena argues that there are factual disputes as to whether the QCP/Arena MSA is governed by maritime or Louisiana law. If the agreement is governed by maritime law, the LOAIA's anti-indemnification provisions do not apply. The Fifth Circuit has put forth a two-prong test for determining whether a contract is governed by maritime law: (1) "is the contract one to provide services to facilitate the drilling or production of oil and gas on navigable waters?" and (2) "does the contract provide or do the parties expect that a vessel will play a substantial role in the completion of the contract?"[81] No party disputes that the QCP/Arena MSA required QCP to perform work pertaining to oil and gas operations off the coast of Louisianna, so the only disputed issue is whether the parties expected vessels to play a substantial role in completion of the QCP/Arena MSA.

The Fifth Circuit has explained that for a vessel to have a "substantial role," there must be a "direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat."[82] "When work is performed in part on a vessel and in part on a platform or on land, we should consider not only time spent on the vessel but also the relative importance

---

[78] *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (internal quotation marks and citation omitted).
[79] *Id.* (internal quotation marks and citation omitted).
[80] *Am. Family Life Assur. Co. v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013).
[81] *In re Larry Doiron, Inc.*, 879 F.3d 568, 576 (5th Cir. 2018) (en banc).
[82] *Earnest v. Palfinger Marine USA, Inc.*, 90 F.4th 804, 813 (5th Cir. 2024).

13

and value of the vessel-based work to completing the contract."[83] This analysis "ignores the need for vessels to transport equipment and crew to the platform and considers only the other roles the vessels played."[84] In performing this analysis, "the contracting parties' expectations are central."[85] If the scope of a contract and the parties' expectations are unclear, "courts may permit the parties to produce evidence of the work actually performed and the extent of vessel involvement in the job."[86]

In his underlying personal injury action, Gannard, a QCP employee, alleges that he was injured while QPM's crane operator was moving a personnel basket from the Vessel owned by REC Marine to an offshore fixed platform owned by Arena.[87] However, the contract itself does not indicate that the parties anticipated that vessels would play a "substantial role" in the completion of the contract. The QCP/Arena MSA is a contract requiring QCP to provide construction operations on a fixed platform owned by Arena.[88] It mentions indemnification for claims involving a vessel[89] and the conditions for obtaining insurance if either party uses a vessel in the completion of the work,[90] but makes no reference to any maritime work or any maritime obligations on the part of QCP. While vessels were used for transportation purposes, the use of a vessel in the transportation of personnel to or from offshore platforms alone does not qualify as a "substantial

---

[83] *Doiron*, 879 F.3d at 576 n.47.
[84] *In re Crescent Energy Servs., L.L.C.*, 896 F.3d 350, 360 (5th Cir. 2018).
[85] *Id.* at 359.
[86] *Doiron*, 879 F.3d at 577.
[87] *See* ECF No. 1 at 4; ECF No. 8 at 10; ECF No. 37 at 4; ECF No. 38 at 1.
[88] The QCP/Arena MSA specifies that QCP will "perform certain work" for Arena. ECF No. 1-1 at 1.
[89] The QCP/Arena MSA provides that Arena agrees to indemnify QCP from and against all claims, demands, etc. arising out of the performance of the contract or the use of a vessel by Company Group. ECF No. 1-1 at 3-4.
[90] The QCP/Arena MSA provides that "to the extent that either party provides either vessels or aircraft in connection with performance of work or services under this agreement, that party shall procure and maintain . . . policies of insurance . . . ." ECF No. 1-1 at 2. It also provides that "[i]f any waterborne vessels are employed in the operations, the party retaining the vessels shall carry or require owners of such vessels to carry insurance." *Id.* at 13.

14

role" in the completion of the contract so as to apply maritime law.[91] Based on the contract itself, there is no "direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat."[92] Thus, Arena has not set forth a plausible basis for believing that vessels played a substantial role in the completion of the QCP/Arena MSA. Additionally, Arena has not shown a plausible basis for believing that discovery will likely create a genuine issue of material fact. Arena has not set forth more than vague assertions that additional discovery will produce unspecified facts needed to show that vessels played a substantial role in the completion of the contract.[93] Thus, the QCP/Arena MSA is not a maritime contract.

While there is a provision in the QCP/Arena MSA stating that the contract "shall be governed by and interpreted in accordance with General Maritime Law,"[94] this provision is not enforceable because it violates an important public policy of the state.[95] Article 3537 of the Louisiana Civil Code provides that the governing law is the law of the state whose "policies would be most seriously impaired if its law were not applied to that issue."[96] The state whose law should apply is the state that "in light of its connection to the parties and the transaction and its interests implicated in the conflict, would bear the most serious legal, social, economic, and other consequences 'if its law were not applied' to the issue at hand."[97] In passing the LOAIA, the Louisiana legislature declared that indemnity provisions which purport to indemnify a party for its

---

[91] *See In re Crescent Energy Servs*, 896 F.3d at 360.

[92] *Earnest*, 90 F.4th at 813.

[93] During oral argument, Arena argued that QCP sought to delete the Policy's Watercraft Exclusion, indicating that QCP anticipated that vessels were going to be involved in the work performed under the QCP/Arena MSA. However, QCP's intention with respect to the deletion of the Watercraft Exclusion is not relevant to whether the terms of the QCP/Arena MSA contemplated the substantial use of the vessel.

[94] ECF No.1-1 at 6.

[95] *See Smith v. Enervest Operating, L.L.C.*, No. CIV.A. 603CV1922, 2005 WL 1630023, at *4-5 (W.D. La. July 1, 2005) (finding that the choice of law provision in the parties' contract was not enforceable because Louisiana's conflict laws determined that enforcement would violate an important public policy of the state).

[96] La. Civ. Code art. 3537.

[97] *Id.* at Comment (c).

15

own negligence violate the public policy of Louisiana.[98] Given that both the Named Insured QCP and the additional insured REC Marine are Louisiana limited liability companies; that the underlying accident occurred off the coast of Louisiana; that QCP is the type of indemnitor that the Louisiana legislature specifically contemplated providing protection for with the anti-indemnification policy announced in the LOAIA; that the nature of the agreement therefore implicates the policy of the LOAIA; and that the QCP/Arena MSA pertained to work to be performed exclusively in Louisiana's territorial waters, the choice of law provision in the QCP/Arena MSA is unenforceable.[99] Louisiana law (and the LOAIA) therefore applies to the QCP/Arena MSA.

### C. Can QCP Be Required to Pay a Deductible That Includes the Defense and Liability Costs of REC Marine Consistent With the LOAIA?

The LOAIA "protects oilfield contractors from oil companies who press for master service contracts requiring contractors to provide indemnification even when the oil company is at fault" by declaring such indemnity provisions null and void.[100] Similarly, provisions requiring a contractor/indemnitor to extend its insurance coverage to cover the principal's acts of negligence and fault are also void under the LOAIA because they shift "the economic burden of insurance coverage or liability onto an independent contractor."[101] In *Marcel v. Placid Oil*, the Fifth Circuit created a narrow exception to this prohibition where "the principal pays for its own liability coverage."[102] Under those circumstances, "no shifting occurs" because the economic burden of insuring the principal is not shifted onto the indemnitor when the principal pays for the cost of

---

[98] La. R.S. § 9:2780.
[99] *See Smith*, 2005 WL 1630023, at *5 (finding that the parties' choice of law provision was unenforceable because the nature and purpose of the agreement directly implicated the policy of the LOAIA).
[100] La. R.S. § 9:2780, *Smith*, 2005 WL 1630023, at *5.
[101] *Marcel v. Placid Oil*, 11 F.3d 563, 569 (5th Cir. 1994).
[102] *Id.*

16

being named as an additional insured on the indemnitor's policy.[103] Courts often refer to the premium paid by the principal under these circumstances as a "*Marcel* premium."[104]

Here, Arena paid the *Marcel* premium required to insure the Company Group (including REC Marine) under the Policy. Because the *Marcel* premium has been paid, Arena and REC Marine contend that QCP is responsible for paying the entirety of the $250,000 deductible under the Policy as the Named Insured. QCP, on the other hand, argues that the deductible is a cost of providing insurance coverage to REC Marine, and that an attempt to shift that cost to QCP falls outside the *Marcel* exception and violates the LOAIA.

QCP's motion presents a question of first impression: whether the payment of an insurance deductible by a contractor/indemnitor frustrates the prohibitions of the LOAIA, even when the principal pays the *Marcel* premium required to be named as an additional insured on the indemnitor's policy. The Fifth Circuit has explained that the "purpose of a deductible is to shift some of the insurer's risk (that is, covered risk) to the insured, which is accomplished by setting a limit on the value of covered losses below which the insurer is not obligated to pay."[105] It is a "mechanism for shifting risk from the insurer to the insured."[106] In the typical case, the insurer pays covered risks, advances the cost of defense, and then seeks reimbursement from the insured for that portion paid that falls within the deductible.[107] This reimbursement represents some portion

---

[103] *Id.*
[104] *See, e.g., Willis v. Barry Graham Oil Serv., L.L.C.*, 122 F.4th 149, 153 (5th Cir. 2024).
[105] *Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyds, London*, 612 F.3d 383, 387–88 (5th Cir. 2010).
[106] *Id.*
[107] *Id.*

of the insured's liability and cost of defense arising from that insured's negligence. Accordingly, "a deductible clause can only logically be applied after a covered loss has been established."[108]

In the present case, the Policy provides that Travelers' "right and duty to defend any 'suits' seeking those damages . . . apply irrespective of the application of the deductible amount."[109] The Policy further provides that Travelers "may pay any part or all of the deductible amount to effect settlement of any 'claim' or 'suit' and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as we have paid."[110] The Policy defines "you" as a "Named Insured" and QCP is listed as a Named Insured.[111] Accordingly, the terms of the Policy would require QCP to reimburse Travelers for defense or liability costs advanced by Travelers but covered by the deductible.

However, these provisions in the Policy do not answer the question of whether this payment obligation, in combination with the indemnification and insurance requirements of the QCP/Arena MSA, violate the LOAIA. QCP argues that if any part of the deductible reimbursement includes liability or defense costs arising out of the negligence of REC Marine, a requirement that QCP pay this portion of the deductible shifts the economic burden of REC Marine's defense or liability costs onto QCP in violation of the LOAIA. The Court agrees.

In *Marcel*, the court reasoned that if the principal pays for its own insurance coverage (the *Marcel* premium), then there would be no shifting of the economic burden because the indemnitor would not bear the cost of additional coverage for the principal.[112] The *Marcel* court further

---

[108] *Id.*; Restatement of the Law, Liability Insurance § 1(2) (defining a deductible as "the amount specified in a liability insurance policy by which coverage under the policy is reduced after the coverage amount is finally determined for the claim or claims to which the deductible applies").
[109] ECF No. 11-4 at 17.
[110] *Id.*
[111] *Id.* at 51, 79.
[112] *Marcel*, 11 F.3d at 569.

reasoned that this arrangement could be "economically desirable in situations where it is less expensive for the independent contractor to add the principal as an additional insured than for the principal to obtain its own insurance on a particular operation."[113] However, *Marcel* did not contemplate how an insurance deductible—and the obligation to pay the deductible—could shift the economic burden of insurance coverage or liability. If QCP is required to reimburse Travelers for the entirety of the deductible, and that deductible includes defense and liability costs arising out of REC Marine's negligence, the requirement to pay would shift these costs onto QCP. Put another way, QCP would essentially be indemnifying REC Marine for a portion of the costs arising out of its own negligence. This result contravenes the text and purpose of the LOAIA.

Arena and REC Marine, however, seem to suggest that mere payment of the *Marcel* premium renders QCP's indemnification obligations enforceable under the LOAIA. In other words, as long as the *Marcel* premium is paid, REC Marine can shift its defense and liability costs to QCP even if insurance does not cover those costs. This argument has some support in a recent case from the Western District of Louisianna, *Willis v. Barry Graham Oil Serv., L.L.C.*, No. 2:19-cv-00165, 2026 WL 396547 (W.D. La. Feb. 12, 2026) (*Barry Graham III*).

That case involved an indemnification agreement and insurance coverage requirements in a master service contract between a contractor, Shamrock Management, and the owner of an offshore platform, Fieldwood Energy.[114] Shamrock performed work on Fieldwood's platform under this agreement and Barry Graham Oil Services operated vessels that made shipments to the platform.[115] Barry Graham sought coverage under the indemnification agreement and the applicable insurance

---

[113] *Id.* at 570.
[114] *Willis v. Barry Graham Oil Serv. LLC*, No. 2:19-CV-00165, 2023 WL 113768, at *1-2 (W.D. La. Jan. 5, 2023), *rev'd and remanded sub nom. Willis v. Barry Graham Oil Serv., L.L.C.*, 122 F.4th 149 (5th Cir. 2024) (*Barry Graham I*).
[115] *Id.*

policy when one of Shamrock's employees was injured by a "tag line" while he was guiding a grocery box from Barry Graham's vessel.[116] In *Barry Graham I*, the district court initially granted Shamrock's motion for summary judgment and dismissed the indemnification claims on the ground that Barry Graham was not covered by the indemnification agreement.[117] On appeal, in *Barry Graham II*, the Fifth Circuit reversed, holding that Barry Graham was part of the "Third Party Contractor Group" covered by the indemnification provisions in the master service contract.[118] The Fifth Circuit also held that the indemnification agreement did not violate the LOAIA because Fieldwood paid the *Marcel* premium, thus rejecting the argument that the *Marcel* exception did not apply because the premium was not paid by Barry Graham.[119] According to the Fifth Circuit, "no part of the cost of insuring Barry Graham is borne by Shamrock because Fieldwood paid the premium to extend coverage over all of Shamrock's 'indemnities as required by' the MSC."[120]

On remand, in *Barry Graham III*, the district court concluded that the relevant insurance policy did not cover the indemnification obligations owed by Shamrock to Barry Graham and, as a result, Shamrock was obligated to pay these indemnification obligations even though they represented the defense and liability costs arising from Barry Graham's own negligence.[121] The district court based this conclusion on the Fifth Circuit's ruling in *Barry Graham II* and the district court's conclusion that the mandate rule required this result.[122] Arena and REC Marine essentially

---

[116] *Id.*

[117] *Id.* at *6-7.

[118] *Willis v. Barry Graham Oil Serv., L.L.C.*, 122 F.4th 149, 154 (5th Cir. 2024) (*Barry Graham II*).

[119] *Id.* at 158.

[120] *Id.*

[121] The coverage question was actually decided in *Willis v. Barry Graham Oil Serv. LLC*, No. 2:19-CV-00165, 2025 WL 3110652, at *1 (W.D. La. Nov. 6, 2025). However, the coverage question, and the court's resolution of that question was further addressed in *Barry Graham III*, 2026 WL 396547 at *3-4.

[122] *Barry Graham III*, 2026 WL 396547 at *3-4.

argue that, based on the reasoning of *Bary Graham III*, the *Marcel* exception applies in the present case even if the payment of the deductible shifts some of the defense and liability costs arising from REC Marine's own negligence to QCP merely because Arena paid the *Marcel* premium. The Court disagrees for at least three reasons.

First, Arena's and REC Marine's argument is inconsistent with the Fifth Circuit's reasoning in *Marcel*. The *Marcel* court held that if the principal pays the premium for the additional insurance coverage (the *Marcel* premium) under an insurance policy and that policy covers the indemnitor's indemnity obligations, the LOAIA is not implicated because the indemnitor would not bear the cost of insuring the principal or the liability costs arising from the principal's own negligence.[123] Implicit in the court's holding is that, if the policy *does not* cover the indemnitor's indemnity obligation, enforcing the indemnity agreement would shift the liability cost of the principal's own negligence onto the indemnitor in violation of the LOAIA. Simply put, *Marcel* does not support the argument that merely paying the *Marcel* premium eliminates the protections of the LOAIA regardless of whether the parties' contractual obligations impermissibly shift the economic burden of the principal's own negligence to the indemnitor.

Second, Arena's and REC Marine's argument cannot be squared with the Fifth Circuit's decision in *Barry Graham II*. The insurance coverage issue in *Barry Graham III* had not been decided when the Fifth Circuit ruled on the applicability of the LOAIA prior to remand. Accordingly, the Fifth Circuit's opinion in *Barry Graham II* never addressed whether a requirement that Shamrock pay the uncovered portions of Barry Graham's defense and liability costs violated the LOAIA. Indeed, the Fifth Circuit's opinion seems to suggest that a lack of coverage might require a different result by noting that "Fieldwood paid the premium to extend

---

[123] *Marcel*, 11 F.3d at 569-70.

coverage *over all* of Shamrock's 'indemnities as required by' the MSC," and that this contractual arrangement thus fell within the *Marcel* exception.[124] Like *Marcel*, the Fifth Circuit's reasoning contemplated that the coverage paid for by the *Marcel* premium would encompass *all of* Shamrock's indemnification liability to Barry Graham. In sum, the Fifth Circuit's holding in *Barry Graham II* does not support the broad expansion of *Marcel* proposed by Arena and REC Marine.

Third, Arena's and REC Marine's argument is inconsistent with the statutory text of the LOAIA. The LOAIA states:

> [A]n agreement. . . is void and unenforceable to the extent that it purports to or does provide for defense or indemnity, or either, to the indemnitee against loss or liability for damages arising out of or resulting from death or bodily injury to persons, which is caused by or results from the sole or concurrent negligence or fault (strict liability) of the indemnitee. . . .[125]

Here, if the indemnification provisions in the QCP/Arena MSA are read to require that QCP pay any portion of the deductible that reflects the defense and liability costs of REC Marine arising out of its own negligence, that requirement violates the LOAIA based on the plain language of the statute. The payment of a *Marcel* premium under these circumstances may address the cost of insurance, but does not address the fact that QCP would bear the economic burden of REC Marine's cost of defense and liability.[126] To the extent *Barry Graham III* can be read to expand *Marcel* in this regard, that case is not binding precedent and the Court respectfully disagrees with its reading of *Marcel* and the Fifth Circuit's ruling in *Barry Graham II.*

---

[124] *Barry Graham III*, 122 F.4th at 158 (emphasis added).

[125] La. R.S. § 9:2780(B).

[126] Arena and REC Marine argue that the question of whether any economic burden has been shifted onto QCP should factor in the relatively large $250,000 deductible. They argue that QCP benefited from the deductible in the form of a lower insurance premium. The Court disagrees. The insurance requirements in the QCP/Arena MSA do not impose any requirements with respect to the deductible. Moreover, Arena's and REC Marine's argument is not grounded in the text of the LOAIA or the *Marcel* line of cases. Nor do they point to any case law that creates an exception to the LOAIA based on lower premiums resulting from a large deductible.

22

Finally, the Court turns to the question of summary judgment. QCP seeks summary judgment on its request for a declaration that the indemnification agreement in the QCP/Arena MSA violates the LOAIA to the extent that it requires QCP to pay the entire $250,000 deductible. But the requirement that QCP pay the deductible does not, in itself, violate the LOAIA. QCP would have to show that the deductible, in whole or in part, includes the defense and liability costs of REC Marine arising out of its own negligence, and that the requirement to pay that deductible would thus shift these costs to QCP in violation of the LOAIA. The Court cannot make this determination based on the current summary judgment record. A "deductible clause can only logically be applied after a covered loss has been established," [127] and, here, the summary judgment record does not reflect that a covered loss has been established. Until it has, the Court cannot determine whether a requirement to pay the deductible in the present case shifts the defense and liability costs of REC Marine onto QCP in violation of the LOAIA. Moreover, while QCP is not a party to the underlying *Gannard* litigation, its affiliate QPM is a party to that litigation, and QPM's defense and liability costs are also covered under the Policy.[128] Given the current record before the Court, summary judgment is premature. Accordingly, the Court denies QCP's motion for summary judgment without prejudice.

---

[127] *Id.*; Restatement of the Law, Liability Insurance § 1(2) (defining a deductible as "the amount specified in a liability insurance policy by which coverage under the policy is reduced after the coverage amount is finally determined for the claim or claims to which the deductible applies").

[128] Until liability for the injuries at issue in *Gannard* is finally adjudicated, it could very well be the case that REC Marine is assigned no fault with respect to the accident. *Lee v. Boyd Racing LLC*, No. 2:22-CV-00174, 2025 WL 359286, at *3 (W.D. La. Jan. 31, 2025) ("The LOAIA only prohibits indemnity for cost of defense where there is 'negligence or fault (strict liability) on the part of the indemnitee,' and the LOAIA does not apply where the indemnitee is not negligent or at fault.") (quoting *Meloy v. Conoco*, 504 So.2d 833, 839 (La. 4/6/1987)).

## IV.
### CONCLUSION

For the reasons set forth above, Travelers' Motion for Judgment on the Pleadings [ECF No. 53] is GRANTED and QCP's Motion for Summary Judgment [ECF No. 26] is DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Arena's claims against Travelers are DISMISSED.

IT IS FURTHER ORDERED that Travelers' Motion to Withdraw [ECF No. 64] is GRANTED and that Travelers' Motion for Judgment on the Pleadings [ECF No. 11] is WITHDRAWN.

THUS DONE in Chambers on this ___31st___ day of March, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

24